IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2351

_____

UNITED STATES OF AMERICA,
Appellee

v.

RICARDO MARRERO,
Appellant

_____

Appeal from a judgment of conviction and sentence
entered in the United States District Court for the
Western District of Pennsylvania at Criminal No. 09-208.

_____

BRIEF FOR APPELLANT

_____

1500 Liberty Center          LISA B. FREELAND
1001 Liberty Avenue          Federal Public Defender
Pittsburgh, PA  15222
(412) 644-6565               KAREN SIRIANNI GERLACH
                             Assistant Federal Public Defender
                             Counsel of Record

                             Attorneys for Appellant,
                             Ricardo Marrero

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . i

Statement of Jurisdiction . . . . . . . . . . . . . . . . . 1

Statement of the Issue . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . 3

Statement of the Facts . . . . . . . . . . . . . . . . . . 4

Statement of Related Cases and Proceedings . . . . . . . . . 20

Summary of the Argument . . . . . . . . . . . . . . . . . . 21

Argument:

    THE PRIOR CONVICTIONS USED TO QUALIFY MR. MARRERO AS A
    CAREER OFFENDER WERE NOT CRIMES OF VIOLENCE. THEY
    INVOLVED RECKLESSNESS RATHER THAN PURPOSEFUL VIOLENT
    CONDUCT. MR. MARRERO SHOULD THEREFORE HAVE BEEN
    SENTENCED AS A NON-CAREER OFFENDER . . . . . . . . . . . 23

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . 39

Certificate of Membership in Bar . . . . . . . . . . . . . 40

Certificate Pursuant to Federal Rule of
 Appellate Procedure 32(a)(7)(C) . . . . . . . . . . . . . 40

Certificate of Identical Text . . . . . . . . . . . . . . . 40

Certificate of Virus Check . . . . . . . . . . . . . . . . 40

Volume I of Appendix for Appellant . . . . . . . . . App. 1-16

Certificate of Service . . . . . . . . . . . . . . . . . . 41

# TABLE OF AUTHORITIES

**CASES**:

Begay v. United States
    553 U.S. 137, 128 S.Ct. 1581 (2008 . . 26,27,28,29,31,32,36
Commonwealth v. Cottam
    616 A.2d 988 (Pa. Super. 1992) . . . . . . . . . . . . . 36
Commonwealth v. Distefano
    782 A.2d 574 (Pa. Super. 2001) . . . . . . . . . . . . 35,36
Commonwealth v. Drum
    59 Pa. 9 (1868) . . . . . . . . . . . . . . . . . . . . 35
Commonwealth v. Morley
    658 A.2d 1357 (Pa. Super. 1995) . . . . . . . . . . . 36
Commonwealth v. Scales
    648 A.2d 1205 (Pa. Super. 1994) . . . . . . . . . . . 35
Commonwealth v. Seibert
    622 A.2d 361 (Pa. Super. 1993) . . . . . . . . . . . 35,36
Commonwealth v. Tielsch
    934 A.2d 81 (Pa. Super. 2007) . . . . . . . . . . . . 35
Gall v. United States
    128 S.Ct. 586 (2007) . . . . . . . . . . . . . . . . . 38
Johnson v. United States
    130 S.Ct. 1265 (2010) . . . . . . . . . . . . . . . . 33
Shepard v. United States
    125 S.Ct. 1254 (2005) . . . . . . . . . . . . . . . 33,34
Stinson v. United States
    113 S.Ct. 1913 (1993) . . . . . . . . . . . . . . . . 36
United States v. Hopkins
    577 F.3d 507 (3d Cir. 2009) . . . . . . . . . . . . . 28
United States v. Johnson
    587 F.3d 203 (3d Cir. 2009) . . . . . . . 2,29,31,32,33,36
United States v. Lee
    612 F.3d 170 (3d Cir. 2010) . . . . . . . . . . . . 32,36
United States v. McQuilkin
    97 F.3d 723 (3d Cir. 1996) . . . . . . . . . . . . . . . 2
United States v. Stinson
    592 F.3d 460 (3d Cir. 2010) . . . . . . . . . . 32,33,34
United States v. Woods
    576 F.3d 400 (3d Cir. 2009) . . . . . . . . . . . . 36,37


**STATUTES**:

18 Pa.C.S.A. § 106 . . . . . . . . . . . . . . . . . . . 30
18 Pa.C.S.A. § 2502 . . . . . . . . . . . . . . 21,23,29,30,35
18 Pa.C.S.A. § 2701 . . . . . . . . . . . . 21,23,30,31,32,33,34

18 U.S.C. § 924 . . . . . . . . . . . . . . . . . . . . . . . 26,28
18 U.S.C. § 2113 . . . . . . . . . . . . . . . . . . . . . . . 3,6
18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . 1
18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . 16,17,19
28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . 1

**<u>MISCELLANEOUS</u>:**

U.S.S.G. § 2B3.1 . . . . . . . . . . . . . . . . . . . . . 6,7
U.S.S.G. § 3D1.2 . . . . . . . . . . . . . . . . . . . . . . 7
U.S.S.G. § 3D1.4 . . . . . . . . . . . . . . . . . . . . . . 7
U.S.S.G. § 4A1.1 . . . . . . . . . . . . . . . . . . . . . . 7
U.S.S.G. § 4A1.3 . . . . . . . . . . . . . . . . . . . . . . 16
U.S.S.G. § 4B1.1 . . . . . . . . . . . . . . . 7,8,23,24,30,34,37
U.S.S.G. § 4B1.2 . . . . . . . . . . . . . . . . . . . . passim
U.S.S.G. § 4B1.2, app. n. 1 . . . . . . . . . . . . . . . . 25
U.S.S.G. § 4B1.2, commentary . . . . . . . . . . . . . 9,11,36

## STATEMENT OF JURISDICTION

This is an appeal from a judgment of sentence entered in the United States District Court for the Western District of Pennsylvania at Criminal No. 09-208.

The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, which grants the district courts original jurisdiction over all offenses against the laws of the United States. The United States Court of Appeals for the Third Circuit has appellate jurisdiction pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over appeals from all final decisions of the district courts.

The district court sentenced Mr. Marrero on May 2, 2011. The district court entered Mr. Marrero's sentence on the dockets on May 3, 2011. Mr. Marrero filed a timely notice of appeal on May 17, 2011.

## STATEMENT OF THE ISSUE

THE PRIOR CONVICTIONS USED TO QUALIFY MR. MARRERO AS A CAREER OFFENDER WERE NOT CRIMES OF VIOLENCE. THEY INVOLVED RECKLESSNESS RATHER THAN PURPOSEFUL VIOLENT CONDUCT. SHOULD MR. MARRERO HAVE THEREFORE BEEN SENTENCED AS A NON-CAREER OFFENDER?

Preservation of the issue and ruling on the issue.

Mr. Marrero preserved this issue in his Defendant's Position with Respect to Sentencing Factors, and in his Defendant's Reply to Government's Response to Defendant's Position with Respect to Sentencing Factors. (App. 52-60, 74-79). The district court ruled upon this issue in its tentative findings. (App. 1-9.)

Standard of review.

This court exercises plenary review over the legal question of whether a particular crime constitutes a crime of violence. *United States v. Johnson*, 587 F.3d 203, 207 (3d Cir. 2009), *citing, United States v. McQuilkin*, 97 F.3d 723, 727 (3d Cir. 1996).

## STATEMENT OF THE CASE

A grand jury in the Western District of Pennsylvania indicted the appellant, Ricardo Marrero, with two counts of bank robbery in violation of 18 U.S.C. § 2113(a). (App. 28-29.) Mr. Marrero pled guilty to both counts of the indictment. (App. 30-50.) The district court sentenced Mr. Marrero to 96-month terms of imprisonment at each of the counts of conviction, with the terms to run concurrently. (App. 10-15.) Mr. Marrero filed a timely notice of appeal. (App. 16.)

**STATEMENT OF THE FACTS**

The Facts.

This case resulted from two separate bank robberies in February of 2009. Each of the two robberies represented a separate count in the indictment.

The first robbery (Count One) occurred on February 9, 2009, when a robber entered the First Commonwealth Bank in Etna, Pennsylvania, a bank insured by the Federal Deposit Insurance Corporation. The robber approached the teller at the second window, threw a white plastic bag at her, and demanded money. The teller put $1,011 from her drawer into the plastic bag. The robber reached over the teller counter, grabbed the plastic bag, and ran out of the bank's front doors. Witnesses saw him fleeing to the right of the bank exit. (App. 45.)

During the robbery a bank employee activated the alarm. Two FBI special agents responded to the scene and interviewed five bank employees and one bank customer, all of whom described the robber. (App. 45.) Video surveillance photographs from the robbery provided photographs of the robber. (App. 45-46, 47-48.)

Two weeks later on February 25, 2009, the second robbery (Count Two) occurred at the First Commonwealth Bank in Dormont, Pennsylvania, a bank insured by the Federal Deposit Insurance Corporation. The robber approached the first teller window and demanded that the teller fill a white bag with money. Then the

robber approached the second teller window, banged his hand on the counter, and demanded money.  The robber grabbed money from the second teller's hand and took the bag from the first teller.  The robber fled the bank with $3,040 in cash.  (App. 46.)

The first teller put bait money in with the money she gave the robber.  The removal of the bait money activated a sensor indicating that a robbery had occurred.  Because of the alarm, FBI special agents responded to the scene and interviewed four bank employees.  They gave the FBI agents descriptions of the robber. (App. 46.)  There were also video surveillance photographs of the robbery.  (App. 46-47.)

A special agent returned to both banks with photo arrays.  At the first bank, one of the employees positively identified the appellant, Ricardo Marrero, from the photo array.  At the second bank, one employee gave a 100% positive identification of Ricardo Marrero from a photo array, and a second employee gave an 80% positive identification from a photo array.  (App. 47.)

On May 10, 2009, Pittsburgh police received an anonymous tip that the bank robber they were looking for was at the Greyhound bus station in downtown Pittsburgh.  The person who gave the tip knew that Mr. Marrero was attempting to leave on a Greyhound bus, and had received a ride to the bus station.  The caller had seen pictures of the bank robber on a local television station's website, and positively identified Mr. Marrero from those pictures.

As a result of the tip, Pittsburgh police arrived at the bus station and detained Mr. Marrero.  (App. 47.)

The Charges.

A grand jury in the Western District of Pennsylvania indicted the appellant, Ricardo Marrero, with two counts of bank robbery in violation of 18 U.S.C. § 2113(a).  (App. 28-29.)

The Guilty Plea.

The district court held a change of plea hearing.  (App. 30-50.)  The government summarized the facts it would prove if the case went to trial.  (App. 45-48.)  That summary is set forth above in the Facts section, pp. 4-6, *supra*.

The district court found that there was an adequate factual basis for the plea, and that Mr. Marrero was entering the plea knowingly and voluntarily.  The district court accepted the plea and found Mr. Marrero guilty of both counts charged in the indictment.  (App. 49.)

The Presentence Report.

The probation office issued a Presentence Report ("PSR").  The PSR separately calculated the guideline ranges for Counts One and Two.  It began the guideline calculation for each count with a base offense level of 20 pursuant to U.S.S.G. § 2B3.1.  (PSR, ¶s 16,

22.) Then the PSR added two points pursuant to U.S.S.G. § 2B3.1(b)(1) because the property of a financial institution was taken. (PSR, ¶s 17, 23.) This resulted in an adjusted offense level of 22 for each of the counts. (PSR, ¶s 21, 27.)

The PSR noted that according to U.S.S.G. § 3D1.2(d), Counts One and Two were not groupable. (PSR, ¶ 14.) As a result the PSR applied the multiple-count adjustment under U.S.S.G. § 3D1.4. This resulted in the addition of two points for a combined adjusted offense level of 24. (PSR, ¶s 28-33.) Then, after subtracting three points for acceptance of responsibility (PSR, ¶s 34-35), Mr. Marrero's offense level came to 21. (PSR, ¶ 36.)

However, these calculations were preempted by the PSR's classification of Mr. Marrero as a career offender. This raised his offense level to 32. (PSR, ¶ 37.) After the subtraction of three points for acceptance of responsibility (PSR, ¶s 38-39) his final offense level as a career offender was 29. (PSR, ¶ 40).

The PSR computed Mr. Marrero's criminal history score as 6. Because he committed the instant offense while on parole, the PSR added two points pursuant to U.S.S.G. § 4A1.1(d) for a criminal history score of 8. (PSR, ¶ 47.)

These calculations were, however, again preempted by Mr. Marrero's career offender status. As a career offender, Mr. Marrero was placed in criminal history category VI pursuant to U.S.S.G. § 4B1.1(b). (PSR, ¶ 48.) The combination of offense

level 29 and criminal history category VI yielded a guideline sentencing range of 151 to 188 months.  (PSR, ¶ 71.)


Positions of the Parties.

1.  Government's Position.

The government responded to the PSR in its Government's Position with Respect to Sentencing Factors, and indicated that it had no objections to the PSR.  (App. 51.)

2.  Defendant's Position.

Mr. Marrero filed a Defendant's Position with Respect to Sentencing Factors.  (App. 52-60.)  He objected to his classification as a career offender.  Specifically, Mr. Marrero argued that his 2003 conviction for third-degree murder, and his 2005 conviction for simple assault, did not qualify as crimes of violence under U.S.S.G. § 4B1.1.  And without two predicate felony convictions for either crimes of violence or controlled substance offenses, he did not qualify as a career offender.  (App. 52-53.)

For a prior conviction to qualify as a crime of violence, it must fall into one of two categories.  First, it must have "as an element the use, attempted use, or threatened use of physical force against the person of another."  Or, second, it must be "burglary of a dwelling, arson, or extortion, involve[] use of explosives, or otherwise involve[] conduct that presents a serious potential risk

of physical injury to another." (App. 53, *quoting* U.S.S.G. § 4B1.2(a)(1) and (a)(2).

In determining whether a prior conviction fits into one of these two categories, the Third Circuit has held that the defendant's actual conduct is irrelevant. Instead, the statute of conviction and its required elements must be examined. The violent felony definition from the Armed Career Criminal Act is used to determine whether the prior offense constitutes a crime of violence. (App. 53-54.)

A conviction for mere recklessness does not constitute a crime of violence. (App. 54.) And, when the record reveals that a defendant could have committed a prior offense in multiple ways, the sentencing court must assume that the prior conviction rested upon the least of the possible acts. (App. 55.)

Here, Mr. Marrero pled guilty to murder in the third-degree. Under Pennsylvania law, third-degree murder occurs with malice, but without intent, and not in conjunction with the perpetration of a felony. (App. 55.) Pennsylvania law emphasizes that third-degree murder is an unintentional act. Thus, because third-degree murder in Pennsylvania is not an intentional act, it cannot be a crime of violence, and thus, it also cannot be a predicate act for purposes of career offender designation. (App. 56, 58.)

Furthermore, the reference in the Commentary to U.S.S.G. § 4B1.2 to "murder" as a crime of violence does not alter this

analysis.  The text of the commentary is always subordinate to the text of the guidelines themselves.  (App. 56.)

Mr. Marrero's prior conviction for simple assault also did not constitute a predicate crime of violence for career offender purposes.  Under Pennsylvania law, Mr. Marrero could have committed the simple assault in multiple ways.  As a result, it must be assumed that he committed the least of the possible acts.  The least of the possible acts would be a reckless act, and a reckless act does not constitute a crime of violence.  Thus, the simple assault should not be used to qualify Mr. Marrero as a career offender. (App. 57, 58.)

In sum, Mr. Marrero's prior convictions for third-degree murder and simple assault did not constitute crimes of violence. As a result, he did not qualify as a career offender, and should not have been sentenced under the career offender guideline.  His advisory guideline range should therefore have been 57 to 71 months, based upon an offense level of 21 and a criminal history category of IV.  (App. 59-60.)

    3.   Government's Response.

The government responded to Mr. Marrero's position in its Government's Response to Defendant's Position with Respect to Sentencing Factors.  (App. 61-73.)  The government disagreed with Mr. Marrero's argument that his predicate offenses were not crimes of violence, and that he should not be sentenced as a career

10

offender.  (App. 61.)  The government argued that the reference in the commentary of U.S.S.G. § 4B1.2 to "murder" as a crime of violence should prevail.  (App. 61.)  The government also challenged Mr. Marrero's argument that malice necessarily excludes intent.  The government argued that this position was incorrect as it improperly equated third-degree murder with involuntary manslaughter.  (App. 63-64.)

The government further argued that Mr. Marrero's plea colloquy for his prior conviction for simple assault could be used to determine the crime to which he pled.  That colloquy revealed that in the course of the simple assault, Mr. Marrero threatened serious bodily injury to the victim.  Thus, the government argued that Mr. Marrero had pled guilty to a crime involving intentional and knowing behavior.  (App. 65-66.)

4.  <u>Defendant's Reply</u>.

Mr. Marrero filed a Defendant's Reply to Government's Response to Defendant's Position with Respect to Sentencing Factors.  (App. 74-79.)  Mr. Marrero argued that the government's position conceded that third-degree murder requires malice.  Because malice does not require intent, third-degree murder is not a crime of violence.  (App. 75-76.)  Moreover, the guilty plea transcript for Mr. Marrero's simple assault conviction, which the government attached to its pleading, does not establish that Mr. Marrero's simple assault is a crime of violence.  The transcript does not reveal the

particular section of the Pennsylvania simple assault statute to which Mr. Marrero pled guilty. We must therefore assume that the simple assault conviction rested upon the least of the acts in the statute, and not a crime of violence. (App. 77-79.)

Addendum to the PSR.

The probation office filed an Addendum to the Presentence Report. The Addendum noted Mr. Marrero's objection to his classification as a career offender. The Addendum continued to maintain that the two prior convictions constituted crimes of violence, and thus, predicate offenses for career offender purposes. The Addendum reasoned that manslaughter has been deemed to be a crime of violence. Thus, *a fortiori*, murder is a crime of violence. The Addendum also noted that other courts had found simple assault to be a crime of violence.

Response to Addendum.

Mr. Marrero filed a Defendant's Response to Addendum to the Presentence Report. (App. 80-82.) Mr. Marrero noted that the Addendum cited Third Circuit case law for the proposition that simple assault constitutes a crime of violence. But the Addendum neglected to note that the Third Circuit remanded that case for resentencing. And at resentencing, the district court found that the simple assault did not qualify as a crime fo violence. (App.

80-81.)  Moreover, the guilty plea transcript for Mr. Marrero's simple assault conviction contains no judicial finding of *mens rea*. (App. 81.)  "Because the record is silent as to *mens rea*, this Court must assume that his simple assault conviction rested upon a *mens rea* of recklessness."  (App. 81-82.)  Thus, Mr. Marrero continued to maintain that his simple assault conviction was not a crime of violence.  (App. 82.)

Memorandum in Mitigation of Sentence.

Mr. Marrero also filed a Memorandum in Mitigation of Sentence. (App. 83-105.)  He requested a sentence within the non-career guideline range of 57 to 71 months.  Mr. Marrero had already objected to his career offender status on the grounds that the priors used to qualify him as a career offender did not constitute crimes of violence.  However, Mr. Marrero made the alternative argument that his objections to the predicate offenses might warrant a downward variance or downward departure.  (App. 83-84.)

The memorandum detailed Mr. Marrero's background.  He was born in Puerto Rico, and immigrated with his family to Coatesville, Pennsylvania.  His mother suffered from undiagnosed schizophrenia and was unable to properly care for him and his siblings.  (App. 84.)  Alcohol and drug abuse exacerbated her problems.  (App. 85.)

Mr. Marrero struggled in school.  One IQ test resulted in a score of 78 which is borderline mental retardation; a second

resulted in a score of 86 which is low average intelligence. He also received a diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"). Mr. Marrero dropped out of school in seventh grade, having achieved a first grade reading level, and a fourth grade math level. (App. 86.)

Mr. Marrero's father, like his mother, abused drugs and alcohol. To make matters worse, his parents were physically abusive with each other. Mr. Marrero's father died shortly before his sentencing in this case. Mr. Marrero was incarcerated at the time of his father's death, and had not seen him for approximately two years. Mr. Marrero was unable to properly grieve with his family over his father's death. (App. 86.)

Mr. Marrero himself experimented with drugs and alcohol at a young age. At age 14 he began to drink alcohol and to smoke marijuana. He then began to regularly use PCP and cocaine. At age 15, in order to escape a community that had become infested with drugs, Mr. Marrero went to live with an aunt and uncle in South Carolina. Mr. Marrero behaved well in school and in the community. Tutors came to the home after school to help Mr. Marrero with his school work. After approximately one year, Mr. Marrero's parents insisted that he return home because they needed his monthly disability check to survive. (App. 87.)

Mr. Marrero regressed after his return home. Eight months after his return he was arrested for homicide. He was only 17

years old.  He entered a guilty plea to third-degree murder and was sentenced to three to six years incarceration.  He remained in custody for over five years.  (App. 87-88.)

After his release Mr. Marrero met and married Lucy Silva who suffers from bipolar disorder and a serious drug addiction.  Ms. Silva became angry at Mr. Marrero while they were dining out at a restaurant with Mr. Marrero's brother, and left to wait in the car. When Mr. Marrero and his brother came out of the restaurant, Ms. Silva tried to run them over.  Mr. Marrero reached into the driver's side window in an effort to turn the car off to prevent any harm to anyone.  As a result of his actions, Mr. Marrero was arrested for simple assault and sentenced to 11 ½ to 23 months incarceration.  Additionally, the conviction caused him to violate his probation, and he was sentenced to two to ten years for that violation.  (App. 88.)

While Mr. Marrero was incarcerated, he learned that he has health problems.  (App. 89-90.)  As a result of those health issues, Mr. Marrero was taking pain killers to relieve the symptoms.  At the time of the instant offense, Mr. Marrero was taking 20 to 30 pain killers each day.  He was fired from his job for his drug use, and his addiction contributed to his decision to rob the two banks.  (App. 90-91.)  However, Mr. Marrero did not have a weapon during the robberies, and never threatened to harm anyone in any way during the robberies.  (App. 91.)

Mr. Marrero argued, first, that the district court should depart downward because the career offender sentencing guideline range overstated the severity of his criminal history and offense level. (App. 91.) The sentencing guidelines (§ 4A1.3(b)(1)) allow a downward departure if there is reliable information indicating that the criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes. (App. 93-95.) Here, one of Mr. Marrero's qualifying convictions occurred nearly fifteen years ago when he was just seventeen years old. The sentence imposed for it was relatively light given the severity of the offense. His only other conviction for which he received criminal history points resulted in a sentence of 11 ½ to 23 months imprisonment. Thus, it was not clear here that a sentence of nearly 12 ½ to 15 years was necessary, or bore any rational relationship to the prior offenses. It was plainly excessive, and warranted a downward departure. (App. 96.)

Alternatively, Mr. Marrero argued for a downward variance. The nature and circumstances of the offense, in addition to the history and characteristics of the defendant, are appropriate considerations for variances under 18 U.S.C. § 3553(a)(1). Several courts have held that sentencing courts can consider predicate offenses under these criteria. The remoteness in time of one of the qualifying priors, Mr. Marrero's youth and immaturity at the

time of the offenses, and the relatively light sentences imposed, would be properly considered as history and characteristics justifying a downward variance. (App. 97-98.)

Mr. Marrero also argued for a downward departure based upon his physical and mental condition. Section 5K2.0(a)(4) of the sentencing guidelines allows departures based upon physical mental and emotional conditions. More specifically, it allows departures on these grounds if the physical, mental or emotional conditions are, as is the case here, present to an unusual degree, and distinguish the case from typical cases. (App. 98-99.)

A recent audit identified deficiencies in the Bureau of Prisons' delivery of health services generally, and with regard to the treatment of Mr. Marrero's health problems in specific. (App. 99-100.) In addition to Mr. Marrero's physical problems, he has been functioning at an intellectually low level since elementary school. When he dropped out of school he was only able to read at a first grade level. (App. 102.) This combination of physical and mental infirmities set Mr. Marrero's case apart from typical cases, and warrant a downward departure. (App. 102-103.) Mr. Marrero further argued that if the district court would not use these factors as a basis for a downward departure, that it consider them in the context of a downward variance as they constitute his history and characteristics under 18 U.S.C. § 3553(a). (App. 103.)

Additionally, Mr. Marrero history and characteristics warranting a downward departure included his troubled upbringing with a mentally ill mother and parents who abused alcohol and drugs, and failed to provide their children with the necessities of life or proper supervision. (App. 103-104.) Additionally, the nature and circumstances of the offense included the fact that Mr. Marrero committed the bank robberies in this case, without a weapon, and without any threats of bodily harm to anyone. Moreover, his significant drug dependence contributed to his unfortunate decisions to commit these robberies. (App. 104.)

Memorandum Order and Tentative Findings.

In anticipation of sentencing, the district court issued a Memorandum Order and Tentative Findings and Rulings. (App. 1-9.) The district court overruled Mr. Marrero's objection to his classification as a career offender. (App. 4-7.) The district court therefore agreed with the PSR that Mr. Marrero's offense level was 29 and his criminal history category was VI, yielding a sentencing range of 151 to 188 months. (App. 8.) The district court indicated that it would rule upon Mr. Marrero's requests for a downward departure and/or variance at sentencing. (App. 9.)

<u>Sentencing Hearing</u>.

At the sentencing hearing (App. 171-195) Mr. Marrero renewed his request for a downward departure or downward variance, based upon the arguments set forth in his sentencing memorandum. (App. 172-179.) Mr. Marrero also asked that if the district court not sentence him to the lower guideline range, that it consider ordering his federal time to run concurrently with a state sentence he was serving. (App. 179.) In his statement to the court, Mr. Marrero admitted that he has a drug addiction. (App. 182.)

The district court adopted as final its memorandum order and tentative findings. This meant that Mr. Marrero remained classified as a career offender, with a guideline range of 151 to 188 months. (App. 185.)

The district court began its analysis under 18 U.S.C. § 3553(a). (App. 185.) The district court reasoned that the goals of § 3553(a) could be satisfied by a sentence which was "below the armed career guidelines range, but above the guidelines range for the two bank robberies." The district court therefore imposed a sentence of 96 months imprisonment at both Counts One and Two, with the two terms to be served concurrently. (App. 186.) The district court also ordered Mr. Marrero to pay $1,011 in restitution to First Commonwealth Bank in Etna, and $3,040 to the First Commonwealth Bank in Dormont. (App. 186-187.) Finally, the district court imposed a three-year term of probation. (App. 187.)

The district court denied Mr. Marrero's request that his sentence be made to run concurrently with his state sentence. (App. 189-194.)

Appeal.

Mr. Marrero filed a timely notice of appeal.  (App. 16.)

**STATEMENT OF RELATED CASES AND PROCEEDINGS**

Counsel knows of no related cases or proceedings.

## SUMMARY OF THE ARGUMENT

The district court sentenced Mr. Marrero as a career offender. Mr. Marrero now challenges on appeal the district court's classification of him as a career offender. Specifically, he argues that his prior convictions for (1) simple assault under 18 Pa.C.S.A. § 2701(a)(1), and (2) third-degree murder under 18 Pa.C.S.A. § 2502(c), do not constitute crimes of violence.

Mr. Marrero's prior convictions for third-degree murder and simple assault must be evaluated to determine if they have "as an element the use, attempted use, or threatened use of physical force against the person of another," under U.S.S.G. § 4B1.2(a)(1) or the "force clause." If they do not fit this definition, then they must involve "purposeful, violent and aggressive" conduct, like the enumerated offenses under U.S.S.G. § 4B1.2(a)(2) or the "residual clause."

Simple assault under Pennsylvania law criminalizes nonviolent or reckless conduct, as well as violent and intentional conduct. Because Pennsylvania's simple assault statute involves both kinds of conduct, we must examine the guilty plea colloquy for Mr. Marrero's prior simple assault conviction. And that transcript does not reveal the elements to which Mr. Marrero pled guilty. As a result, this Court must conclude that the conviction rested upon the least of the possible acts. And the least of the acts under the simple assault statute is reckless conduct, and thus, an

offense which is **not** a crime of violence.  Mr. Marrero's prior simple assault conviction therefore **cannot** be used to qualify Mr. Marrero as a career offender.

The second prior conviction used to qualify Mr. Marrero as a career offender, third-degree murder under Pennsylvania law, is also not a crime of violence.  Third-degree murder under Pennsylvania law requires malice which allows murder to occur despite the absence of any intent to kill.  Malice is the mens rea for the crime of third-degree murder, and is defined to include recklessness.  It is beyond dispute that a conviction for mere recklessness cannot constitute a crime of violence, and cannot be used for sentence enhancement under the career offender guideline.

In sum, Mr. Marrero does not have the two prior convictions required to have sentenced him as a career offender.  His advisory guideline range should therefore have been lowered from the 151 to 188 month career offender range that the district court applied, to the non-career offender guideline range of 57 to 71 months.  His sentence must be vacated, and his case remanded for resentencing.

**ARGUMENT**

> THE PRIOR CONVICTIONS USED TO QUALIFY MR. MARRERO AS A
> CAREER OFFENDER WERE NOT CRIMES OF VIOLENCE. THEY
> INVOLVED RECKLESSNESS RATHER THAN PURPOSEFUL VIOLENT
> CONDUCT. MR. MARRERO SHOULD HAVE THEREFORE BEEN
> SENTENCED AS A NON-CAREER OFFENDER.

The district court sentenced Mr. Marrero as a career offender.
Mr. Marrero now challenges on appeal the district court's
classification of him as a career offender. Specifically, he
argues that his prior convictions for (1) third-degree murder under
18 Pa.C.S.A. § 2502(c), and (2) simple assault under 18 Pa.C.S.A.
§ 2701(a)(1), do not constitute crimes of violence. As a result,
he does not have the two prior convictions required to have
sentenced him as a career offender. His advisory guideline range
should therefore have been lowered from the 151 to 188 month career
offender range that the district court applied, to the non-career
offender guideline range of 57 to 71 months.

Career Offender Status – How it Occurs
and Why it is Being Challenged Here.

Career offender classification occurs under U.S.S.G. § 4B1.1.
A defendant is a career offender if three criteria are met. First,
the defendant must have been at least 18 years of age when he
committed the instant offense. Second, the instant offense must be
a felony conviction that is either a crime of violence or a
controlled substance offense. Third, the defendant must have had

at least two prior felony convictions for either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1.

It is the third of these criteria – the requirement that a defendant have two prior convictions for either a crime of violence or a controlled substance offense – which is at issue here.  Mr. Marrero argues that the two prior convictions which the district court used to qualify him as a career offender, are not actually crimes of violence.

What is a "crime of violence" for career offender purposes?

The guidelines provide a definition section for the terms used in the career offender guidelines, U.S.S.G. § 4B1.1.  Section 4B1.2 is entitled "Definitions of Terms Used in Section 4B1.1." Subparagraph (a) defines "crime of violence":

> (a) The term "crime of violence" means any offense under federal or state law, **punishable by imprisonment for a term exceeding one year**, that –
>
> > (1) has as an element the **use, attempted use, or threatened use of physical force against the person of another**, or
> >
> > (2) **is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury** to another.

U.S.S.G. § 4B1.2(a).  (Emphasis added.)

Thus, a crime of violence for career offender purposes must, first, be punishable by imprisonment for a term exceeding one year.

It must also (1) involve the actual, attempted or threatened use of physical force against another, **or** (2) be on the specifically enumerated list of crimes or present risk of physical injury to another.

Application Note 1 to U.S.S.G. § 4B1.2 elaborates upon the meaning of "crime of violence." It gives a list of specific offenses which constitute crimes of violence, and also includes any offenses involving physical force, the serious risk of injury, or the use of explosives:

> "Crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.
>
> **"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.**

Application Note 1, U.S.S.G. § 4B1.2. (Emphasis added.)

Recent case law has elaborated on the determination of what constitutes a crime of violence. That case law bears examination here.

<u>The Case Law on Crime of Violence</u>.

The Supreme Court has addressed the definition of "violent felony" in the context of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581 (2008). The Armed Career Criminal Act defines "violent felony" as a crime punishable by a term of imprisonment exceeding one year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

The question in *Begay* was whether Driving Under the Influence ("DUI"), in violation of New Mexico law, constituted a violent felony. The Supreme Court noted that in making that determination, the categorical approach applies. In other words, the definition of the offense under the law controls, and not the individual facts of the case. *Begay*, 128 S.Ct. at 1584. At the outset, the Supreme Court concluded that DUI does not involve the "threatened use of physical force against the person of another." Thus, the issue boiled down to whether the statutory elements of DUI "present[] a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). *Begay*, 128 S.Ct. at 1584.

The Supreme Court acknowledged that DUI "is an extremely dangerous crime." Nonetheless, the Supreme Court found that DUI

does not involve "serious potential risk of physical injury to another," under U.S.S.G. § 4B1.2(a)(1). Thus, the Supreme Court reasoned that to qualify as such a crime, there had to be a similarity in nature with the enumerated examples of burglary, arson, extortion, or a crime involving the use of explosives, under U.S.S.G. § 4B1.2(a)(2). *Begay*, 128 S.Ct. at 1584. The criteria needed to achieve such similarity, were that the crime had to involve conduct which is "purposeful, violent and aggressive." *Begay*, 128 S.Ct. at 1586. Crimes such as DUI which are strict liability crimes, or crimes which do not require intent, are not "purposeful, violent and aggressive." They therefore do not constitute violent felonies under the Armed Career Criminal Act. *Begay*, 128 S.Ct. at 1586-1587.


Application of the Case Law.

Application of *Begay* to the current case is appropriate, and even necessary. The career offender definition of "crime of violence," which applies to the application of the career offender guidelines, is nearly identical in wording to the Armed Career Criminal Act definition of "violent felony" which the Supreme Court discussed in *Begay*. And in terms of content and substance, they are completely identical.

The guideline definition of crime of violence for career offender purposes is the following:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

The Armed Career Criminal Act's definition of violent felony is as follows, with the changes from the guideline highlighted:

(I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary [ ], arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and...

18 U.S.C. § 924(e)(2)(B)(I) and (ii).

Thus, "the definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other..." *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009). The holding of *Begay* therefore applies here.

This means that Mr. Marrero's prior convictions for third-degree murder and simple assault must be evaluated to determine if they have "as an element the use, attempted use, or threatened use of physical force against the person of another," under U.S.S.G. § 4B1.2(a)(1) or the "force clause." If they do not fit this

definition, then they must involve "purposeful, violent and aggressive" conduct, like the enumerated offenses under U.S.S.G. § 4B1.2(a)(2) or the "residual clause." *Begay*, 128 S.Ct. at 1586.

Under the categorical approach which *Begay* requires, these determinations are limited to the statutory elements of the offense; there can be no consideration of Mr. Marrero's individual conduct. A plea colloquy or charging document can be consulted only if necessary to show "the particular part of the statute of which the defendant was actually convicted." *United States v. Johnson*, 587 F.3d 203, 208 (3d Cir. 2009).

The Prior Convictions.

The two prior convictions which the district court used to qualify Mr. Marrero as a career offender (PSR, ¶ 37) both occurred in violation of Pennsylvania law. They were third-degree murder (PSR, ¶ 42) and simple assault (PSR, ¶ 43).

Mr. Marrero's third-degree murder conviction occurred in violation of 18 Pa.C.S.A. § 2502(c):

§ 2502. Murder

(a) Murder of the first degree. – A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) Murder of the second degree. – A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

      (c) **Murder of the third degree. – All other kinds of murder shall be murder of the third degree.**

(Emphasis added.)

Mr. Marrero's simple assault conviction occurred in violation of 18 Pa.C.S.A. § 2701(a)(1):

    § 2701.  Simple Assault

    (a) Offense defined.–A person is guilty of assault if he:

      (1) **attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another.**

(Emphasis added.)

Third-degree murder is a felony of the first degree.  18 Pa.C.S.A. § 2502(c).  As such it is punishable by a sentence of imprisonment, the maximum of which is more than ten years.  18 Pa.C.S.A. § 106(b)(2).  Simple assault is a misdemeanor of the second degree.  18 Pa.C.S.A. § 2701(b).  As such it is punishable by a term of imprisonment, the maximum of which is not more than two years.  18 Pa.C.S.A. § 106(b)(7).  Thus, both of these offenses meet the first criteria of a crime of violence – they are punishable by a term of imprisonment exceeding one year.  U.S.S.G. § 4B1.2(a).

However, to constitute a crime of violence under U.S.S.G. § 4B1.2(a), and thus for purposes of career offender enhancements under U.S.S.G. § 4B1.1, another criteria must also be considered.  These convictions must satisfy the force clause.  In other words, they must have "as an element the use, attempted use, or threatened

use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). **Or**, they must satisfy the residual clause by being "burglary of a dwelling, arson, or extortion, involve[] use of explosives, or otherwise involve[] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). In other words, under the residual clause they must involve "purposeful, violent and aggressive" conduct, like the enumerated offenses under U.S.S.G. § 4B1.2(a)(2). *Begay*, 128 S.Ct. at 1586.

Neither the simple assault nor first degree murder fall under the force clause or the residual clause of § 4B1.2(a). Neither crime constitutes a crime of violence for purposes of sentence enhancement under the career offender guideline.


Neither Simple Assault nor Third-Degree
<u>Murder Constitutes a Crime of Violence</u>.

    1. <u>Simple Assault is not a Crime of Violence</u>.

Simple assault under Pennsylvania law "criminalizes distinct types of conduct." Some of those types of conduct are offenses which involve violent conduct. Other types of conduct criminalized under the statute involve nonviolent or reckless conduct. *United States v. Johnson*, 587 F.3d 203, 209 (3d Cir. 2009).

The distinct types of conduct criminalized under Pennsylvania's simple assault statute, 18 Pa.C.S.A. § 2701(a)(1), are apparent from the plain language of the statute. That plain

language encompasses conduct that is intentional and violent, as well as conduct that is reckless:

§ 2701.  Simple Assault

(a) Offense defined.–A person is guilty of assault if he:

(1) **attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another**.

(Emphasis added.)

To the extent that the Pennsylvania's simple assault statute criminalizes reckless conduct, it does not constitute a crime of violence.  But to the extend that it criminalizes intentional and knowing conduct, it does constitute a crime of violence under U.S.S.G. § 4B1.2(a).  *United States v. Stinson*, 592 F.3d 460, 463 (3d Cir.2010), *citing*, *Johnson*, 587 F.3d at 210-212.  This is consistent with the Supreme Court's ruling in *Begay* which held that conduct that is "purposeful, violent and aggressive" is a crime of violence, and can be used for sentence enhancement.  *Begay*, 128 S.Ct. at 1586.  But "following *Begay*, a conviction for mere recklessness cannot constitute a crime of violence," and cannot be used for sentence enhancement under the career offender guideline. *United States v. Lee*, 612 F.3d 170, 196 (3d Cir. 2010).  *See also, Johnson*, 587 F.3d at 208.  *See Begay*, 128 S.Ct. at 1586.

Moreover, after *Begay* the determination of whether the offense to which the defendant pled guilty was a crime of violence must be made under the categorical approach.  And under the categorical approach, these determinations are limited to the statutory

elements of the offense; there can be no consideration of the underlying individual conduct. Where the statute covers conduct which is both violent and nonviolent, the plea colloquy or charging document can be consulted to show "the particular part of the statute of which the defendant was actually convicted." *United States v. Johnson*, 587 F.3d 203, 208 (3d Cir. 2009). This is known as the modified categorical approach. And again, it involves looking "beyond the statutory elements to determine the particular part of the statute under which the defendant was actually convicted." **The modified categorical approach does not allow an examination of the underlying facts of the case**. *Stinson*, 592 F.3d at 462, *citing*, *Shepard v. United States*, 125 S.Ct. 1254 (2005).

Because Pennsylvania's simple assault statute involves purposeful and violent conduct, as well as reckless and nonviolent conduct, this Court must apply the modified categorical approach. The guilty plea colloquy for the prior simple assault conviction is included in the appendix to this brief. (App. 67-73.) However, that transcript does not reveal the elements of 18 Pa.C.S.A. § 2701(a) to which Mr. Marrero pled guilty. And when the record indicates that the prior offense could have been committed in multiple ways, the district court must conclude that the conviction "rested upon...the least of these acts[.]" *Johnson v. United States*, 130 S.Ct. 1265, 1269 (2010), *citing, Shepard,* 544 U.S. at 26. And the least of the acts under 18 Pa.C.S.A. § 2701(a)(1) is

reckless conduct, and thus, an offense which is **not** a crime of violence, and an offense which **cannot** be used to qualify Mr. Marrero as a career offender.

The government and the district court concluded that the plea colloquy transcript proved that Mr. Marrero's pled guilty to simple assault based upon intentional and violent conduct. They based those conclusions upon specific facts set forth in the transcript, rather than on any evidence of the **statutory elements** to which Mr. Marrero pled guilty. (App. 6, 65.) This reliance on specific facts is **not** permitted under the categorical approach, and cannot be upheld. *See, Stinson*, 592 F.3d at 462, *citing*, *Shepard,* 544 U.S. at 26.

In sum, Pennsylvania's simple assault conviction covers conduct which is both violent and nonviolent. This allows consultation of the plea colloquy. The plea colloquy here provides no support for the conclusion that Mr. Marrero guilty plea under Pennsylvania's simple assault statute was a plea to a crime of violence. As a result, Mr. Marrero's simple assault conviction cannot be used to qualify him as a career offender, and to enhance his sentence under U.S.S.G. § 4B1.1.

2. <u>Third-Degree Murder is not a Crime of Violence</u>.

The second prior conviction used to qualify Mr. Marrero as a career offender, third-degree murder under 18 Pa.C.S.A. § 2502(c), is also not a crime of violence. Like Mr. Marrero's prior conviction for simple assault, it should not have been used for sentence enhancement under the career offender guideline.

Third-degree murder under Pennsylvania law requires the following elements: "a killing done with legal malice but without the specific intent to kill required in first-degree murder." *Commonwealth v. Tielsch*, 934 A.2d 81, 84 fn.3 (Pa. Super. 2007). *See also, Commonwealth v. Distefano*, 782 A.2d 574, 582 (Pa. Super. 2001); *Commonwealth v. Seibert*, 622 A.2d 361, 364 (Pa. Super. 1993).

Malice is an essential element of third-degree murder. Malice allows murder to occur despite the absence of any intent to kill. *Commonwealth v. Scales*, 648 A.2d 1205, 1207 (Pa. Super. 1994), *quoting, Commonwealth v. Drum*, 59 Pa. 9 (1868). Malice is the mens rea for the crime of third-degree murder, and is defined to include recklessness:

> Malice consists of a "wickedness of disposition, hardness of heart, cruelty, **recklessness of consequences**, and a mind regardless of social duty, although **a particular person may not be intended to be injured**...["] [M]alice may be found where the defendant **consciously disregarded** an unjustified and extremely high risk that his actions might cause serious bodily injury.

*Distefano*, 782 A.2d at 582, *citing, Commonwealth v. Cottam*, 616 A.2d 988, 1004 (Pa. Super. 1992). (Emphasis added.) *See also, Commonwealth v. Morley*, 658 A.2d 1357, 1365 (Pa. Super. 1995); *Seibert*, 622 A.2d at 364.

Thus, malice is an essential element of third-degree murder, and malice entails recklessness. It is beyond dispute that "following *Begay*, a conviction for mere recklessness cannot constitute a crime of violence," and cannot be used for sentence enhancement under the career offender guideline. *Lee*, 612 F.3d at 196. *See also, Johnson*, 587 F.3d at 208. *See Begay*, 128 S.Ct. at 1586. Thus, third-degree murder cannot be a crime of violence under the career offender guideline.

It is true that the commentary to U.S.S.G. § 4B1.2 lists "murder" as a crime of violence. But this reference does not alter the analysis. For starters, that reference cannot trump the holdings of *Begay, supra,* and *Lee, supra.* Moreover, guideline commentary is always subordinate to the guidelines themselves. *Stinson v. United States*, 113 S.Ct. 1913 (1993).

The Seventh Circuit has provided further support for Mr. Marrero's position that third-degree murder does not constitute a crime of violence. The Seventh Circuit has held that reckless and unintentional killing does not constitute a crime of violence under the career offender guideline. *United States v. Woods*, 576 F.3d 400 (3d Cir. 2009). The Seventh Circuit reached this conclusion in

the context of involuntary manslaughter under Illinois law, and not third-degree murder under Pennsylvania law. However, the dissent noted that involuntary manslaughter is "effectively third-degree murder." *Woods*, 576 F.3d at 414.

In sum, third-degree murder under Pennsylvania law requires malice, and malice involves recklessness. Third-degree murder therefore cannot be a crime of violence. The district court erred by using Mr. Marrero's third-degree murder conviction to qualify him as a career offender.

Conclusion.

For all of the reasons stated above, Mr. Marrero argues that **neither** of the two prior convictions used to qualify him as a career offender constituted crimes of violence. However, even if this Court disagrees with Mr. Marrero on **only one** of these prior convictions, then Mr. Marrero still prevails; a defendant must have **two** prior felony convictions for crimes of violence to be sentenced as a career offender. *See* U.S.S.G. § 4B1.1(a). And, there are no other prior convictions in Mr. Marrero's presentence report which can take the place of any eliminated prior conviction. *See,* PSR, ¶s 41-48.

Additionally, Mr. Marrero acknowledges that he was not sentenced within the career offender guideline range. The district court noted that it could achieve the goals of sentencing with a

sentence below the career offender range of 151 to 188 months, and imposed a sentence of 96 months. (App. 185-186.) But this sentence was still significantly **above** the non-career offender guideline range of 57-71 months. (App. 185.) Moreover, a sentence which is based upon an incorrect calculation of the advisory guideline range is procedurally erroneous, and must be vacated. *Gall v. United States*, 128 S.Ct. 586, 597 (2007).

Here, the sentence was based upon a starting point of the career offender guideline range. And the district court computed the career offender guideline range based upon the erroneous classification of two prior convictions (or at least one prior conviction) as crimes of violence. Thus, the district court's sentencing calculations were procedurally erroneous. Mr. Marrero's sentence must therefore be vacated and his case remanded for resentencing.

## CONCLUSION

For all of the foregoing reasons, the appellant, Ricardo Marrero, respectfully requests that his sentence be vacated, and his case remanded for resentencing.

Respectfully submitted,

**_/s/ Karen Sirianni Gerlach_**
Karen Sirianni Gerlach
Assistant Federal Public Defender
Attorney for Appellant,
Ricardo Marrero

## CERTIFICATE OF MEMBERSHIP IN BAR

I, Karen Sirianni Gerlach, hereby certify that I am a member of the Bar of this Court.

/s/ *Karen Sirianni Gerlach*
Karen Sirianni Gerlach
Assistant Federal Public Defender

## CERTIFICATE PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)(c)

I hereby certify that the within Brief for Appellant filed on behalf of Ricardo Marrero at No. 11-2351 contains 7,808 words and 952 lines, exclusive of title page, Table of Contents, Table of Authorities and certificates of counsel; therefore complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(I).

/s/ *Karen Sirianni Gerlach*
Karen Sirianni Gerlach
Assistant Federal Public Defender

## CERTIFICATE OF IDENTICAL TEXT

I, Karen Sirianni Gerlach, hereby certify that the text of the E-Brief and Hard Copies of the Brief for Appellant filed on behalf of Ricardo Marrero at No. 11-2351 are identical.

/s/ *Karen Sirianni Gerlach*
Karen Sirianni Gerlach
Assistant Federal Public Defender

## CERTIFICATE OF VIRUS CHECK

I, Karen Sirianni Gerlach, hereby certify that a virus check was performed on the Brief for Appellant filed on behalf of Ricardo Marrero at No. 11-2351 using Symantec AntiVirus Corporate Edition v12.1.671.4971 software.

/s/ *Karen Sirianni Gerlach*
Karen Sirianni Gerlach
Assistant Federal Public Defender

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing Brief for Appellant and Appendix for Appellant were mailed this 12th day of September, 2011, via first class United States Mail, to the following:

Rebecca Ross Haywood
Assistant United States Attorney
4000 United States Courthouse
Pittsburgh, Pennsylvania 15219

*/s/ Karen Sirianni Gerlach*
Karen Sirianni Gerlach
Assistant Federal Public Defender